IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

200 NORTH GILMOR, LLC,

    *Plaintiff,*

v.

CAPITAL ONE, NATIONAL
ASSOCIATION,

    *Defendant.*

Civil Action No.: ELH-11-03164

## MEMORANDUM OPINION

Plaintiff 200 North Gilmor, LLC ("Gilmor") is a Maryland limited liability company engaged in business pertaining to real estate. *See* "Verified Complaint" ("Complaint," ECF 2) ¶ 1. Its sole member is Tammy Phelps. *Id.* ¶ 5. Gilmor has filed suit against defendant Capital One, National Association ("Capital One"), a national banking association, based on Capital One's failure to tender insurance proceeds to Gilmor with respect to real property purchased by Gilmor. *Id.* ¶¶ 2, 58. The Complaint contains claims for Breach of Contract (Count I); Detrimental Reliance (Count II); Fraud—Intentional Misrepresentation (Count III); Fraud—Concealment (Count IV); Negligent Misrepresentation (Count V); and Unjust Enrichment (Count VI). Several exhibits are appended to the suit.[1]

Capital One has moved to dismiss all but Count VI of plaintiff's Complaint ("Motion," ECF 9), supported by a memorandum of law ("Motion Memo," ECF 9-1). According to

---

[1] Suit was filed in the Circuit Court for Baltimore City. Defendant timely removed the case to this Court (ECF 1), based on diversity jurisdiction. *See* 28 U.S.C. §§ 1332 and 1441. When an action is based on diversity, relevant state law controls. *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Maryland follows the rule of *lex loci delicti* for tort actions, which means that the court applies the substantive law of the state where the wrong occurred. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648-49 (2007). As to contract actions, Maryland courts ordinarily apply the law of the jurisdiction where the contract was made, under the principle of *lex loci contractus*. *Id.* at 618, 925 A.2d at 648. The parties agree that Maryland law applies to plaintiff's claims.

defendant, Count I fails to satisfy the Maryland Statute of Frauds, codified in Maryland Code (2010 Repl. Vol.), § 5-104 of the Real Property Article ("R.P."); Counts II, III, IV, and V fail to allege facts sufficient to demonstrate reasonable reliance; Counts IV and V fail to allege facts sufficient to impose a tort duty on Capital One; and Count V, negligent misrepresentation, is not actionable because it pertains to an expression of future intentions.  Motion at 1; Motion Memo at 11.  Gilmor opposes the Motion (ECF 17), and has filed a memorandum in support of its position ("Opposition," ECF 18), to which Capital One has replied ("Reply," ECF 22).

As the matter has been fully briefed, the Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

### Factual and Procedural Background[2]

On or about January 22, 2010, Gilmor, through Phelps, entered into a written contract (the "Contract") to purchase from S.E.T.Y. Group, LLC ("SETY"), an apartment building located in Baltimore, Maryland, containing eighteen dwelling units (the "Property"). *Id.* ¶¶ 6, 8, 12.  The Property is commonly known as 200-210 North Gilmor Street.  *Id.* ¶ 8.  SETY is a limited liability company with two members, Yohannes Debesai and Eskinder Isayas.  *Id.* ¶ 7. Gilmor intended to rent out all eighteen units, and agreed to pay $350,000 for the Property.  *Id.* ¶¶ 9, 12.  A copy of the Contract is appended to the Complaint as plaintiff's Exhibit A.

The Property was encumbered by a "Deed of Trust and Security Agreement" ("Deed of Trust") between Debesai and Isayas, as grantors, and Greenpoint Mortgage Funding, Inc. ("Greenpoint"), as lender.  *Id.* ¶ 13.  The original principal amount of the Deed of Trust was $945,000.  *Id.*  As a result of various fees, such as default interest, late fees, and other charges,

---

[2] The Court must construe the facts alleged in the light most favorable to plaintiff, as the party opposing the motion.  *See Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

the principal amount escalated to more than $1,000,000.  *Id*.[3]

Capital One is a successor to Greenpoint.  *Id*. ¶ 14.  Through its authorized representative, Veeno Suchdeve of the Special Assets Division, Capital One agreed to a "short sale" of the Property, by which it agreed to accept the net sum of $303,450.34.  *Id*. ¶ 16.  Closing was set for July 12, 2010.  *Id*. ¶ 17.  As a result of a fire on June 25, 2010, the Property was damaged.  *Id*. ¶ 18.  Moreover, because neither SETY nor Capital One secured the Property after the fire, it was further damaged by vandalism.  *Id*. ¶ 19.  All eighteen units were damaged, and nine of them were rendered uninhabitable.  *Id*. ¶¶ 22, 23.

Phelps discovered the fire damage and vandalism when she visited the Property on or about June 30, 2010.  *Id*. ¶ 20.[4]  Paragraph 7 of the Contract stated:

> If the [P]roperty is damaged by fire or other casualty prior to closing, and cost of restoration does not exceed 3% of the assessed valuation of the improvements located on the Property, cost of restoration will be an obligation of the Seller and closing will proceed pursuant to the terms of this Agreement with cost thereof escrowing at closing.  In the event cost of restoration exceeds 3% of the assessed valuation of the improvements and Seller declines to repair or restore, Buyer will have the option of either taking the Property as is, together with either the said 3% or any insurance proceeds payable by virtue of such loss or damage, with Seller paying Buyer in cash any insurance deductible, OR of canceling this Agreement.

Put another way, "if (a) the [P]roperty is damaged by fire or other casualty prior to closing, (b) the cost of restoration exceeds 3% of the assessed valuation of the improvements and (c) the Seller declines to repair or restore the Property," the Buyer "has the option of cancelling the [C]ontract."  Complaint ¶ 11.  Or, the Buyer can take the Property as is, but access any applicable insurance proceeds.  *See* Exhibit A ¶ 7.

---

[3] An excerpt of the Deed of Trust is appended to the Complaint as plaintiff's Exhibit B.

[4] It is not clear when SETY and/or Capital One became aware of the damage to the Property.

SETY refused to restore the Property.  Complaint ¶ 26.  Phelps contacted Suchdeve on or about July 2, 2010, "to discuss the condition of the Property."  *Id.* ¶ 27.  Suchdeve requested photographs and video documenting the damage, which Phelps provided.  *Id.* ¶ 28.  Phelps called Suchdeve again on July 5, 2010 and July 6, 2010, to inquire "as to what actions Capital One planned to take with regard to the damaged Property."  *Id.* ¶ 29.  Phelps "requested that an insurance claim be filed and paid to [Gilmor] or that the purchase price [of the Property] be reduced."  *Id*.  Suchdeve advised Phelps that the price of the Property would not be reduced because Capital One "was already losing money with the short sale of the Property."  *Id.* ¶ 30.  However, he advised Phelps that Capital One did maintain "a forced placed insurance policy on the Property" (the "Policy").  *Id.* ¶ 31.

According to Gilmor, the cost of restoring the Property would exceed 3% of the assessed valuation of the improvements.  *Id*. ¶ 24.  On or about July 9, 2010, Phelps notified Suchdeve that Gilmor "intended to cancel the Contract pursuant to paragraph 7," quoted above, "because of the substantial damages sustained to the Property and because Capital One did not sufficiently respond to her request for an insurance claim and/or a price reduction."  *Id.* ¶ 32.  Suchdeve explained to Phelps "that the Property was in tax sale and that Capital One needed to get to closing."  *Id*. ¶ 33.  Moreover, he "promised Ms. Phelps that, if Gilmor proceeded to Closing and purchased the Property, Capital One would add Gilmor to its Insurance Policy as an additional insured and that all insurance proceeds would be paid to Gilmor for the repair of the Property."  *Id*.  Gilmor claims that it "accepted Capital One's promises" and "proceeded to Closing with the expectation that it had been or would be added to Capital One's Insurance Policy," and that Gilmor "would be paid all insurance proceeds" for "damage to the Property."  *Id.* ¶ 34.

4

Closing took place, as scheduled, on July 12, 2010.  *Id.* ¶ 35.  A "Payoff Statement" issued to Debesai and Isayas, signed by Suchdeve for Capital One on July 12, 2010, reflects that the amount of the unpaid balance for the Deed of Trust was $1,010,148.72.  *Id.* ¶ 15.  A copy of the Payoff Statement for Loan # 202672473 is appended to the Complaint as plaintiff's Exhibit C.  A "Settlement Statement," appended to the Complaint as Exhibit D, reveals that Capital One received $303,450.34 from the sale of the Property.  *See also* Complaint ¶ 36.  A "Certificate of Satisfaction" was executed by Jackie Surato on behalf of the lender, certifying that the Deed of Trust was "fully paid and discharged" and "hereby released."  *See* plaintiff's Exhibit E; Complaint ¶ 37.

Gilmor alleges that, after settlement, Phelps "made several attempts to contact Mr. Suchdeve to confirm Gilmor's addition [to] the Insurance Policy and to obtain instructions for the filing of the insurance claim," but Suchdeve was "unresponsive."  Complaint ¶ 39.[5]  Phelps then contacted Victoria Brown, who was employed by Capital One as part of the "Special Assets Division."  *Id.* ¶ 40.  On or about September 10, 2010, Brown asked Phelps "to provide information about Gilmor, including its Articles of Organization, as well as the photographs [and] video [of the damage to the Property] and the fire report" from the Baltimore City Fire Department.  *Id.* ¶ 40, 38.  According to Gilmor, Brown assured Phelps that, "upon receipt of those requested items, the insurance claim would be initiated."  *Id.* ¶ 40.  Phelps "provided the requested items to Ms. Brown via overnight delivery."  *Id.*

On or about September 29, 2010, more than two weeks after Phelps provided the requested items to Brown, Phelps spoke with Laura Ciotti, also of Capital One, who allegedly told Phelps that "she was filing the claim with Capital One's insurance carrier," and assured

---

[5] The Complaint does not specify when Phelps attempted to contact Suchdeve.

Phelps that she "would be contacted by the carrier within three to six business days." *Id.* ¶ 41. Ciotti also "confirmed" that Gilmor had been added to the Policy, and that the insurance check would be mailed directly to Phelps. *Id.* ¶¶ 42-43.

On or about October 4, 2010, Phelps spoke with Jeff Schakleford, "an independent contractor hired by Proctor Financial [('Proctor')], Capital One's insurance carrier." *Id.* ¶ 44. Gilmor avers that Phelps "worked diligently" with Schakleford to process the claim, and submitted a report to Proctor in November 2010. *Id.* ¶¶ 45-46. According to Gilmor, Proctor approved a claim of approximately $262,062.50 (the "Proceeds"). *Id.* ¶ 47. When Phelps spoke with Ciotti on December 9, 2010, Ciotti told Phelps she would ascertain "what steps needed to be taken in order to ensure that the insurance check was provided to Gilmor." *Id.* ¶ 48.

The next day, December 10, 2010, Ciotti called Phelps and left a voice mail message telling her that "only a signature was required by a Capital One representative to endorse the insurance check and that the insurance proceeds would be sent to Gilmor via overnight delivery." *Id.* ¶ 49. That same day, Ciotti sent an email to Phelps, stating: "Proctor Financial will be overnighting a check to me [i.e., Ciotti] today for $131,031.25, which I will then overnight to the following address: Tammy Phelps[,] 13114 Manor Drive[,] Mount Airy, MD 21771." A copy of the email of December 10, 2010, is appended to the Complaint as plaintiff's Exhibit F. *See also* Complaint ¶ 50. The email also instructs Phelps to contact Keely Angott at Proctor if she would "like to dispute the claim in any way (or the amount of the check)." Plaintiff's Exhibit F. Phelps contacted Angott,[6] who told Phelps that $131,031.25 constituted half the Proceeds, and that Proctor would hold the other half of the Proceeds "until construction and rehabilitation work commenced." Complaint ¶ 51.

---

[6] It is not clear on which date Phelps contacted Angott.

It is undisputed that the check was never sent to Phelps.  On or about December 21, 2010, Angott contacted Phelps to advise her that the check had, instead, been sent to Capital One, and she instructed Phelps to contact Jackie Surato and Janet Kirby, Ciotti's supervisor.  *Id.* ¶ 52. Phelps first contacted Kirby, who informed Phelps that the check was in Surato's possession, and that "because Captial One agreed to a short sale on the Property, they were entitled to the fire claim insurance check."  *Id.* ¶ 54.  When Phelps contacted Surato, she was transferred to Amy Grasso, with whom she left a message.  *Id.* ¶ 53.  Grasso did not return Phelps's call.  *Id.* Although Phelps "made numerous telephone calls" to Surato, and "left numerous messages," she never heard from Surato.  *Id.* ¶ 55.

On or about December 23, 2010, Phelps received a phone call from Brown, the Capital One employee who had first assisted her in initiating the insurance claim.  *Id.* ¶¶ 56, 40.  Brown requested "an outline of the scope of work to be performed on the Property."  *Id.* ¶ 56.  Phelps "immediately" faxed and emailed the outline to Brown.  *Id.*  On or about January 7, 2011, Brown called Phelps again, confirming that because Capital One had accepted a short sale of the Property, it was entitled to retain the Proceeds.  *Id.* ¶ 57.

Gilmor claims that because it "has not received any insurance proceeds from Capital One, Proctor Financial or any other individual or entity," it has "been unable to make the necessary repairs to the Property."  *Id.* ¶ 58.  This suit followed:

### Discussion

*Standard of Review*

Capital One's motion to dismiss is founded on FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted.  In considering a motion to dismiss under Rule 12(b)(6), a court "'must accept as true all of the factual allegations contained in the complaint,'"

and must "'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (quoting *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

Under FED. R. CIV. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. But, the rule demands more than bald accusations or mere speculation. *Id.* To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556. A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the rule. *Id.* at 555.

A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6). *German v. Fox*, 267 F. App'x 231, 233 (4th Cir. 2008). Both *Twombly*, 550 U.S. 544, and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), make clear that, in order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal*, 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754,

768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

In resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts.  *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 1740 (2010).   Moreover, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted).   But, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'"  *Iqbal*, 129 S. Ct. at 1950 (citation omitted).

As noted, plaintiff appended several exhibits to the Complaint.   In considering a Rule 12(b)(6) dismissal, the court may properly consider documents "attached or incorporated into the complaint," as well as documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic."  *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also E.I. du Pont de Nemours & Co.*, 637 F.3d at 448; *MCS Services, Inc. v. Jones*, No. 10-1042, 2010 WL 3895380, at *1 n. 3 (D. Md. Oct. 01, 2010); *Benfield Elec. Co., Inc. v. Keybank*, No. 09-2071, 2009 WL 5206626, at *2 (D. Md. Dec. 23, 2009).   Defendant does not suggest otherwise.

### I.  Breach of Contract and the Statute of Frauds

In Count I, Gilmor asserts: "On or about July 9, 2010, Capital One entered into a contract with Gilmor, whereby Capital One promised to add Gilmor to its Insurance Policy as an additional insured and to tender any and all insurance proceeds to Gilmor."   Complaint ¶ 60.

Gilmor insists that, because of the substantial damage to the Property, it could have invoked ¶ 7 of the Contract with SETY and elected not to proceed with the Contract. *Id.* ¶ 32.  It alleges that, in so proceeding, it "accepted Capital [O]ne's promises and, in exchange, appeared at Closing and purchased of [sic] the Property for $350,000.00," although the Property was "worth much less." *Id.* ¶¶ 61, 68.  Gilmor asserts that, by failing "to add Gilmor as an additional insured to the Insurance Policy," and by failing to remit to Gilmor the Proceeds Capital One received from Proctor, Capital One "breached its contract with Gilmor," causing Gilmor to sustain monetary damages. *Id.* ¶¶ 63-67.

Capital One urges dismissal of the claim, contending that plaintiff's breach of contract claim "rests entirely on oral promises and is thus, barred by the Maryland Statute of Frauds." Motion Memo at 5.  In this regard, Capital One points out that the Contract between Gilmor and SETY is not signed by Capital One; the Settlement Statement "makes no mention of any insurance policy or insurance proceeds"; although the Payoff Statement and the Deed of Trust were executed by defendant, they do not "contain any reference to any alleged promise relating to insurance proceeds"; and the email from Ciotti to Phelps on December 10, 2010, cannot satisfy the statute of frauds, because it "was sent months after the alleged contract was entered into," and "it fails to set forth 'all the promises constituting the contract made between the parties.'"  *Id*. at 7.  Further, it insists that the "part performance" exception to the statute of frauds is inapplicable here, because it applies only to actions in equity, and not to actions for money damages.  Reply at 4.

Gilmor counters that the defendant's oral promise did not implicate the statute of frauds because it did not involve "'the sale or disposition of land or of any interest therein.'" Opposition at 8 (quoting R.P. § 5-104).  Rather, it "pertained to the addition of Gilmor to Capital

One's Insurance Policy and Capital One's agreement to sign over any and all proceeds received from any insurance claim on the Property to Gilmor."  Opposition at 8.  Alternatively, Gilmor maintains that, even if, *arguendo*, the statute of frauds applied to the alleged oral promise, "Capital One is estopped from asserting the Statute of Frauds as a defense because the performance of the parties clearly indicates the existence of an oral contract," and "Maryland courts recognize that part performance under certain circumstances operates as an exception to the Statute of Frauds."  *Id.* at 8-9.

Maryland's statute of frauds, codified in R.P. § 5-104, provides:

No action may be brought on any contract for the sale or disposition of land or any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

Defendant's assertion that the alleged oral promise concerned "the sale or disposition of land or any interest in or concerning land" is unpersuasive.  To begin with, there was a written contract as to the sale of the Property, between SETY, as seller, and Gilmor, as buyer, in satisfaction of the statute of frauds.  At issue here is the alleged oral contract between Gilmor and Capital One, by which Capital One supposedly promised to add Gilmor to its insurance policy, and tender to Gilmor the Proceeds recoverable from the insurer, in return for which plaintiff agreed to proceed with its Contract to buy the Property from SETY, rather than rescind it.  To be sure, the insurance policy pertained to the Property.  But, the fact that the parties' alleged agreement concerned disposition of insurance proceeds for damage to the Property, in exchange for Gilmor's agreement to proceed with the Contract with SETY to buy the Property, does not transform the oral agreement into one that is subject to the statute of frauds.  It is long settled in Maryland that, if the condition concerning land "is collateral to the substantive and predominant thing agreed to be done, then the statute has no application, and the contract is not affected by

it." *Ehlen v. Selden*, 99 Md. 699, 59 A. 120, 121 (1904).  Put another way, the alleged promise here may have been made in the context of a related transaction involving land, but the promise itself was not of the kind within the ambit of the protective mechanism of the statute of frauds.

"The statute of frauds was intended to avoid claims to land based on allegations of parol transactions, with the incidental uncertainties and weakening of record titles, and the statute is dispensed with only upon a high degree of certainty in the proof of an original undertaking." *Sommerman v. Sommerman*, 217 Md. 151, 158, 141 A.2d 738, 741 (1958).  Neither party attacks the validity of the transfer of the Property from SETY to Gilmor.  Nor is there any dispute as to title.  As indicated, the dispute concerns Capital One's alleged promise to add Gilmor to the Policy as an insured if, in return, Gilmor proceeded with the Contract.  I am unaware of any authority that would suggest that disputes of this kind fall within the ambit of the statute of frauds as interests in or concerning land, as defendant suggests.  Reply at 2-3.  Indeed, the authority is to the contrary.

In 4 Corbin On Contracts § 17.4 (rev. ed. 1997), the treatise provides: "If the promise of A is to pay B a sum of money if B will buy land from C, to be held solely for B's own use and in no respect in trust for A, it has been held that the contract between A and B is not within the statute [of frauds]."  Williston is to the same effect, stating: "A contract under which one party agrees to buy land from a third person, taking the conveyance personally, is within the statute [of frauds] if the land is to be held for the benefit of the other party to the contract…; but if the party agreeing to buy the land is to hold it when purchased for his own benefit, an oral contract is valid."  9 Williston On Contracts § 25:3 (4th ed. 2011).  And, the Restatement (Second) of Contracts § 126 (1981) is in accord, stating: "A orally promises B that A will buy Blackacre

from C.  The promise is within the Statute of Frauds, but ceases to be within it if A accepts a conveyance from C."

Plaintiff's breach of contract claim is not barred by the statute of frauds.  Accordingly, defendant's motion to dismiss Count I is denied.

## II.  Reasonable Reliance

As noted, Gilmor has brought claims against Capital One for Detrimental Reliance (Count II); Fraud—Intentional Misrepresentation (Count III); Fraud—Concealment (Count IV); and Negligent Misrepresentation (Count V).  Each of these claims requires plaintiff to show reasonable reliance.

A claim for "detrimental reliance," sometimes called "promissory estoppel," has four elements: (1) "a clear and definite promise" which (2) "the promisor has a reasonable expectation…will induce action or forbearance on the part of the promise" and (3) "which does induce actual and reasonable action or forbearance by the promisee," (4) causing "a detriment which can only be avoided by the enforcement of the promise."  *Pavel Enters., Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 166, 674 A.2d 521, 532 (1996).  *Accord Citiroof Corp. v. Tech Contracting Co., Inc.*, 159 Md. App. 578, 589, 860 A.2d 425, 432 (2004); *Konover Prop. Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 484, 790 A.2d 720, 724 (2002).

To prevail in Maryland on a claim of "intentional misrepresentation," a plaintiff must show that the defendant: "(1) made a representation that was false, (2) knew of its falsity or made it with…reckless indifference…, and (3) made the statement for the purpose of defrauding the injured party; and that the injured party (4) not only relied upon the misrepresentation, but had a right to rely upon it in the full belief of its truth, and would not have executed the contract had it not been made, and (5) suffered damage[s]…."  *DeLeon Enters., Inc. v. Zaino*, 92 Md. App. 399,

416, 608 A.2d 828, 837 (1992) (citation omitted).  *Accord Lavine v. American Airlines, Inc.*, ___

Md. App. ___, ___ A.3d ___, No. 2917, 2011 WL 6003609, *4 (Dec. 01, 2011); *Brass Metal*

*Prods., Inc. v. E-J Enters., Inc*., 189 Md. App. 310, 353, 984 A.2d 361, 386 (2009).

In Maryland, the "essential elements of a claim for fraudulent concealment" are that "(1)

the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to

disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff

took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a

result of the defendant's concealment."  *Green v. H & R Block, Inc.*, 355 Md. 488, 525, 735 A.2d

1039, 1059 (1999).  *Accord Central Truck Ctr., Inc. v. Central GMC, Inc.*, 194 Md. App. 375,

394, 4 A.3d 515, 526 (2010); *Blondell v. Littlepage*, 413 Md. 96, 119, 991 A.2d 80, 94 (2010).

And, four elements must be shown to establish a claim for negligent misrepresentation:

"(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2)

the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has

knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause

loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the

plaintiff suffers damage[s]…."  *Lloyd v. General Motors Corp.*, 397 Md. 108, 136, 916 A.2d

257, 273 (2007) (citation and internal quotation marks omitted).  *Accord Central Truck, supra*,

194 Md. App. at 394-95, 4 A.3d at 526.

Pointing to the common element of reliance, Capital One maintains that plaintiff's

reliance was "unreasonable as a matter of law and thus, Counts II, III, IV, and V should be

dismissed in their entirety."  Motion Memo at 8.  Claiming that Gilmor is "a sophisticated

business entity with experience in real estate transactions," it observes: "Despite the complexity

of the transaction, Plaintiff's experience in the real estate industry, Plaintiff's bargaining

position, and presumably, Plaintiff's access to counsel, Plaintiff relied on wholly oral promises that are clearly barred by the Statute of Frauds." *Id*. at 10.

Gilmor counters that the reasonableness of its reliance is "not a proper subject for a motion to dismiss," because "all inferences must be drawn in favor of the plaintiff." Opposition at 13-14. Gilmor also disputes that it was a "sophisticated business entity," with bargaining power equal to Capital One, noting that Gilmor "is a single-member limited liability company…for which negotiations and communication were conducted by its sole member, Ms. Phelps." *Id*.

Ordinarily, the matter of reasonableness of reliance is an issue reserved for the finder of fact. *See, e.g., Fox v. Dynamark Sec. Ctrs, Inc.*, 885 F.2d 864, *3 (4th Cir. 1989); *MTBR LLC v. D.R. Horton, Inc.*, No. RDB-07-3363, 2008 WL 3906768, *13 (D. Md. Aug. 22, 2008); *Motor City Bagels, L.L.C. v. Am. Bagel Co.*, 50 F.Supp.2d 460, 470 (D. Md. 1999); *B.N. v. K.K.*, 312 Md. 135, 153, 538 A.2d 1175, 1184 (1988) (all applying Maryland law). As the case law cited by defendant suggests, however, there are instances when a sophisticated business entity's reliance on an oral promise may be unreasonable as a matter of law. In *D & G Flooring, LLC v. Home Depot U.S.A., Inc.*, 346 F. Supp. 2d 818, 824 (D. Md. 2004), for example, the district court, applying Maryland law, dismissed plaintiff's promissory estoppel claim because its "reliance on the alleged oral promise was objectively unreasonable." The court stated, *id.*:

> [N]ot only is the alleged oral promise unsupported by a writing, it directly contradicts the terms of a writing executed the same day as the promise was allegedly made. It is unfathomable that a business entity with millions of dollars in annual revenues would not require that a fundamental change in one of its most profitable business relationships be expressed in a writing. This is particularly true where the business has knowledge that the conditions of its new relationship directly conflict with the terms of its prior relationship.

Similarly, in *Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 290 n.9 (D. Md. 2003), the court, applying Maryland law, rejected plaintiff's contention that defendant was "equitably estopped from asserting the statute of frauds," stating:

> As a matter of law, it would be unreasonable for a party (particularly a sophisticated party, like each of the plaintiffs) to spend millions of dollars to renovate its facilities in reliance upon a promise unenforceable under the statute of frauds and expect to recover monetary damages for breach of the promise. To permit the doctrine of equitable estoppel to apply under such circumstances would undermine the statute of frauds and the policies it is designed to promote.

*See also RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1078 (4th Cir. Md. 1982) (reversing judgment for plaintiff on a promissory estoppel claim; plaintiff had "expended $951,000.00 in reliance upon the oral promise by [defendant's] officials to provide it with their lowest price and an unlimited line of credit for an indeterminate period of time, without regard to the state of [defendant's] financial condition," and the Court determined "that incurring such large debts in reliance solely upon an oral promise of this nature clearly exceeds the bounds of commercial reasonableness and hence cannot support recovery under principles of promissory estoppel."); *G & M Oil Co. v. Glenfed Financial Corp.*, 782 F. Supp. 1085, 1091 (D. Md. 1991) (granting defendant's summary judgment motion as to plaintiff's promissory estoppel claim, because plaintiff "clearly could not reasonably rely on any alleged promise by [defendant]," as plaintiff "was an experienced sophisticated business that was represented by undoubtedly competent counsel throughout the loan application process," and "sophisticated business entities don't enter into multimillion dollar transactions without a comprehensive writing, [plaintiff's] counsel sought an unconditional commitment letter from [defendant]. No such letter was ever executed….") (both applying Maryland law).

In this case, it is by no means clear from the minimal record that Gilmor, an LLC with a single member, negotiating the purchase of a single property for the cost of $350,000, is a

"sophisticated business entity."   Apart from defendant's own conclusory allegations as to "Plaintiff's experience in the real estate industry, Plaintiff's bargaining position, and…Plaintiff's access to counsel," Motion Memo at 10, the record does not support Capital One's claim that Gilmor acted unreasonably in relying on Capital One's assurances.   In the present posture of this case, a determination that plaintiff's reliance was unreasonable as a matter of law would be wholly inappropriate.   Accordingly, defendant's arguments do not support dismissal of Counts II, III, IV, and V.   Because these arguments are the only ones advanced as to Counts II and III, defendant's Motion is denied as to Counts II and III.

### III.  Negligent Misrepresentation of a Future Act

In Count V, alleging Negligent Misrepresentation, Gilmor asserts that Capital One was negligent in misrepresenting that "Gilmor would be added as an additional insured on its Insurance Policy" and that "Gilmor would be paid all Claim proceeds."  Complaint ¶¶ 131, 133. Capital One urges dismissal of Count V because Gilmor's "claim for negligent misrepresentation is based entirely on Capital One's promises of future actions," Motion Memo at 11, and "a negligent misrepresentation claim regarding future intentions is not actionable in Maryland."  *Id.* at 12.[7]  Gilmor counters that it is "settled in Maryland that a 'promissory representation made with an existing intention not to perform is actionable for fraud.'"   Opposition at 18 (citation omitted).

"It is true, as a general rule, that an action for fraud will lie only for misrepresentation of past or existing facts, and that breach of a promise to render a performance in the future is

---

[7] In its Reply, at 9-10, Capital One attempts to supplement this argument by asserting that Count V also fails because "Plaintiffs' [sic] Remedies are Solely Contractual."   As this ground was not raised in defendant's Motion and plaintiff was not afforded an opportunity to respond, I will not consider the assertion at this time.   However, after discovery has been conducted, defendant may renew this contention in a motion for summary judgment.

redressable only by an action in contract." *Learning Works, Inc. v. The Learning Annex, Inc.*, 830 F.2d 541, 546 (4th Cir. 1987).   As plaintiff recognizes, however, "'[a] promissory representation made with an existing intention not to perform is actionable for fraud.'" *Id. See also Gooden v. Wells Fargo Home Mortgage*, No. AW–08–2521, 2010 WL 1068119, *4 (D. Md. Mar. 17, 2010) (same); *Orteck Intern. Inc. v. TransPacific Tire & Wheel, Inc.*, No. DKC-05-2882, 2006 WL 2572474, *11 (D. Md. Sept. 5, 2006); *Sass v. Andrew*, 152 Md. App. 406, 436, 832 A.2d 247, 264 (2003); *Parker v. Columbia Bank*, 91 Md. App. 346, 360-61, 604 A.2d 521, 528 (1992) (same).   However, such a representation is not actionable for negligent misrepresentation.

A "negligent misrepresentation claim based on statements promissory or predictive in nature" is not viable "[u]nless the plaintiff puts forward evidence tending to show that the 'promisor' or 'predictor' made the statements with the present intention not to perform…." *Miller v. Fairchild Indus., Inc.*, 97 Md. App. 324, 346, 629 A.2d 1293, 1304 (1993).   But, a promise made with the present intention not to perform is "perforce, an intentional misrepresentation, not a negligent one, and thus cannot sustain an action for negligent misrepresentation." *Id.*   Put another way, "[i]n order for a negligent misrepresentation claim based upon a promise of future conduct to be actionable, the party making the representation regarding its future conduct must know, at the time it makes the representation, that it does not intend to carry out the promise." *Heritage Oldsmobile,* 264 F. Supp. 2d at 291.   But, if "the party knows the representation to be false at the time it is made, then the claim is one for *fraudulent* misrepresentation" and the "negligent misrepresentation claim [is converted] into a claim for fraudulent misrepresentation." *Id.* (emphasis in original); *see also Orteck,* 2006 WL 2572474 at *20 ("To the extent that a party making the representation about its future conduct

knows at the time the statement is made that it is false, the [negligent misrepresentation] claim converts to one of *fraudulent* misrepresentation") (emphasis in original); *D & G Flooring, supra,* 346 F. Supp. 2d at 822 (stating, with respect to plaintiff's claim that defendant made promises without present intent to perform: "These are representations regarding [defendant's] future conduct, i.e., promises; promises are not actionable under a theory of negligent misrepresentation.").

Here, plaintiff asserts that Capital One, through its agents, made a representation of a future intention to add Gilmor to the Policy for the Property, and to pay the Proceeds to Gilmor. Count V, the negligent misrepresentation claim, explicitly claims that, *at the time of the representation,* Capital One had an "existing intention not to perform." *Learning Works,* 830 F.2d at 546. Plaintiff also avers that "Gilmor would not have purchased the Property if Capital One *had accurately represented its intentions* with regard to the [Proceeds]," and that "Gilmor would not have purchased the Property if it knew Capital One's *true intentions*." Complaint ¶¶ 142-43 (emphasis added). In my view, these assertions do not amount to negligent misrepresentation. Instead, they sound in fraud.

However, plaintiff also asserts claims based on fraud in Counts III and IV. Because Count V sounds in fraud, it is duplicative of the other fraud claims. Therefore, the Court will grant the motion to dismiss Count V, without prejudice, and will grant plaintiff fifteen (15) days' leave to amend, so as to attempt to state a claim for negligent misrepresentation.

### IV.  Duty of Care

In Count IV, Gilmor asserts a claim against Capital One for fraudulent concealment.

Such a claim requires plaintiff to establish that Capital One owed Gilmor a duty of care.[8]  Urging

dismissal of this claim, Capital One contends: "Plaintiff here has not, and indeed, cannot, allege

a tort duty owed from Capital One to Plaintiff."  Motion Memo at 13.[9]  Capital One insists that

because "the parties are both sophisticated businesses" and "are of equal bargaining power," and

as "[t]he losses alleged here are purely economic," Gilmor cannot "'justify the imposition of a

duty of care' on Capital One."  *Id.* (citation omitted).

In response, Gilmor argues that the matter of duty "is a question of fact to be

determined by the fact finder."  Opposition at 18.  With respect to Count IV, Gilmor contends

that Capital One "had a duty to inform Gilmor of its actual intent not to add Gilmor as an

additional insured to its Insurance Policy" and "of its actual intent to retain any and all insurance

proceeds."  Complaint ¶¶ 115-16.

The parties have made sweeping statements about "duty," without recognizing that the

scope of duty varies with the underlying tort.  *See, e.g., Odyssey Travel Ctr., Inc. v. RO Cruises,

Inc.*, 262 F. Supp. 2d 618, 629 n. 8 (D. Md. 2003) ("[T]he duty to disclose in a fraudulent

concealment case differs from the duty of care in a negligent misrepresentation case.").  "[M]ere

non-disclosure of facts known to defendant without intent to deceive is not fraud and is not

actionable under Maryland law unless there exists a separate duty of disclosure to plaintiff by

defendant."  *Finch v. Hughes Aircraft Co.*, 57 Md. App. 190, 232, 469 A.2d 867, 888 (1984)

(citation omitted).  The Maryland Court of Special Appeals has said: "A duty to disclose is

typically predicated on a confidential or fiduciary relationship between two parties."  *Latty v. St.*

---

[8] As discussed, *supra*, one of the elements of a claim for fraudulent concealment is that "the defendant owed a duty to the plaintiff to disclose a material fact."  *Green*, 355 Md. at 525, 735 A.2d at 1059.

[9] Capital One also urges dismissal of Count V, the negligent representation claim, on the same basis.  Given my ruling as to Count V, *supra*, I will only consider Capital One's argument as it applies to Count IV.

*Joseph's Soc. of Sacred Heart, Inc*., 198 Md. App. 254, 271-72, 17 A.3d 155, 165 (2011). Additionally, although "ordinarily when one owes no legal obligation to speak, mere silence is not actionable[,]…if what is stated amounts to a 'partial and fragmentary' disclosure, that misleads because of its incompleteness, the 'legal situation is entirely changed'" and "'there is a duty to disclose the additional information necessary to prevent it from misleading the recipient.'" *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 330-31, 674 A.2d 547, 556 (1996) (citations omitted). *Accord Doll v. Ford Motor Co.*, AW–10–01505, 2011 WL 3820324, *4 (D. Md. Aug. 25, 2011).

"To be sure, a confidential relationship may exist in a business relationship. Certain factors above and beyond a typical business relationship must exist, however….For example, a confidential relationship may exist when there is a relationship independent of the business relationship….Additionally, a confidential relationship may exist in a business relationship if 'confidences are reposed by one person in another, who as a result gains an influence and superiority over him.'" *Brass Metal Prods., supra,* 189 Md. App. at 357-58, 984 A.2d at 388-89. There is no suggestion from the facts of this case that Capital One and Gilmor had a confidential or fiduciary relationship, and neither party has suggested as much. Nor has either party alleged a partial or fragmentary representation tending to mislead. Gilmor has merely alleged that Capital One failed to disclose its true intentions regarding the alleged oral contract. In essence, Gilmor asserts that the "fact" concealed by Capital One was that, at the time of the oral promise, it did not intend to perform.

As discussed, "Maryland law recognizes 'a cause of action for fraud predicated upon a promise made with a present intention not to perform it.'" *Sass*, *supra*, 152 Md. App. at 436, 832 A.2d at 264 (citation omitted). *See also Parker, supra*, 91 Md. App. at 360-61, 604 A.2d at

528 ("Maryland law is clear that, while 'fraud cannot be predicated on statements that are merely promissory in nature, or upon expressions as to what will happen in the future,' 'the existing intention of a party at the time of contracting is a matter of fact' and 'fraud may be predicated on promises made with a present intention not to perform them'") (citations omitted).  Moreover, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud."  *Finch, supra,* 57 Md. App. at 239, 469 A.2d at 891.  Put another way, "[j]ust because the relationship between the parties is not such that a duty to disclose is owed does not mean that appellant is legally foreclosed from maintaining a deceit action….One who conceals facts that materially qualify affirmative representations may be liable for fraud."  *Lubore, supra*, 109 Md. App. at 330, 674 A.2d at 556.

I am unaware of any authority suggesting that a claim for fraudulent *concealmen*t may be predicated on a promise made with the present intent not to perform.  But, the parties did not brief the issue, nor have they asked me to so find.  Moreover, discovery has not yet commenced.  To permit Count IV to go forward would not affect the scope of discovery, nor would it affect defendant's right to renew its argument in a later motion for summary judgment.

### Conclusion

For the foregoing reasons, defendant's "Motion To Dismiss Counts I-V Of Plaintiff's Complaint" is hereby granted as to Count V, with leave to amend, and denied as to Counts I, II, III, and IV.  A separate Order consistent with this Memorandum Opinion follows.


Date: March 19, 2012                                              /s/
                                                        Ellen Lipton Hollander
                                                        United States District Judge